EAGLE COMTRONICS, INC., Plaintiff,

v.

JOHN MEZZALINGUA ASSOCIATES, INC., Defendant.

No. Civ. 99CV1320 HGM GL.

United States District Court, N.D. New York.

Dec. 15, 2000.

MacKenzie, Smith Law Firm, Syracuse, NY (Peter D. Carmen, of counsel), Brown, Burr Law Firm, Syracuse, NY (Sthen P. Burr, of counsel) for plaintiff.

Hancock & Estabrook, Syracuse, NY (James R. Muldoon, of counsel), for defendant.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

### INTRODUCTION

Currently before the court is defendant's motion for partial summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 28). Also pending is plaintiff's Rule 65 motion for a preliminary injunction. (Dkt. No. 53). After reviewing their respective assertions and for the reasons that follow, both defendant's motion for partial summary judgment and plaintiff's motion for a preliminary injunction are DENIED.

## FACTS

Plaintiff is owner and manufacturer of United States Patent 5,662,494 ("'494 patent"), entitled "Filter Structure with Self-Sealing Collet Assembly." The "Filter Structure" described in the '494 patent is manufactured for use in the cable television industry. The industry uses this type of filter to decode protected television signals and deliver low noise signals to Internet cable systems. Generally, a filter consists of a circuit board assembly which provides the actual filtering function, and male and female connection ends. A cable is physically attached to the filter and incoming cable signals are received at the "female" connector end. This female connector contains a "collet assembly," which actually receives the copper wire that extends from the front of the cable. The collet assembly is contained within the metal housing of the cable filter. It is the collet assembly that conducts the signal from the cable to the circuit board within the filter.

In the instant case, the alleged patent violation involves a self-sealing interface between the collet assembly and the filter housing. According to plaintiff, traditional techniques for sealing this interface involve: (1) using an epoxy to cover the rear of the collet assembly; or (2) soldering a glass-to-metal seal between the collet assembly and the interior of the filter housing. Because these sealing processes must be performed *in situ*, there are substantial production costs associated with these techniques. Moreover, the seals formed with these methods are permanent and so reuse of the internal filter parts is nearly impossible.

The '494 patent eliminates the need for the *in situ* installation of an environmental seal using the conventional techniques. Plaintiff explains that it designed:

a self-sealing collet assembly having a preformed elastomer seal that effectively creates an environmental seal *as the collet assembly is inserted into the filter housing*

*during manufacturing.* As the outer diameter of the elastomer seal slightly exceeds the inner diameter of the bore in the connector of the filter housing, a tight compression seal is formed as the elastomer seal is inserted into the connector bore.

Plf.'s Mem. of Law Supp. Prelim. Inj. at 5; Dkt. No. 57. Plaintiff contends that this patented process obviates the need for *in situ* sealing and thereby lowers manufacturing costs. *See* Decl. of Joseph A. Zennamo, Jr., Dated January 20, 2000 at ¶ 14 ("Zennamo Declaration"); Dkt. No. 55.[1]

Defendant, John Mezzalingua Associates, Inc., ("PPC"), is plaintiff's chief competitor in the cable filter business.[2] Plaintiff contends that defendant produces a cable filter, the SHP3–50 filter, that infringes upon its '494 patent. It also complains that defendant has gained an unfair competitive sales advantage by peddling this allegedly infringing filter to Eagle's customers.[3] With this lawsuit, plaintiff seeks to enjoin defendant from manufacturing the SHP3–50 cable filter. It also seeks monetary damages for its losses and treble damages for defendant's willful infringement upon the '494 patent.

In response to this litigation, defendant altered the environmental seal used in its SHP3–50 filter ("original SHP3–50") and now claims that the resultant filter ("redesigned SHP3–50") does not infringe upon the '494 patent. Believing that it has successfully changed its seal design, PPC moves for partial summary judgment and asks the court to declare that the redesigned SHP3–50 filter does not violate plaintiff's patent. To support its motion, defendant argues that the SHP3–50 filter does not: (1) read upon any of the claims in the '494 patent; (2) literally infringe upon the '494 patent; and (3) infringe upon the '494 patent under the doctrine of equivalents. Defendant also challenges the validity of the '494 patent.

Plaintiff, of course, objects to defendant's motion for summary judgment and has filed

---

1. Joseph A. Zennamo, Jr., is the registered inventor of this process and the holder of the '494 patent

2. John Mezzalingua Associates, Inc., does business as PPC.

3. As an example of its lost business, plaintiff references an order placed with defendant by Cox Communications for 1,000,000 SHP3–50 filters.

a motion to enjoin production of the SHP3–50 filter. Specifically, it seeks to prevent PPC from "making, using, selling or offering for sale in the United States, or importing into the United States, [defendant's] original, redesigned and commercially available SHP3–50 high pass filter or any other substantially similar water-resistant filter." *See* Pl.['s] Mot. for Prelim. Inj. at 1; Dkt. No. 54. The court will address the parties' motions and respective positions *seriatim.*

## DISCUSSION

### A. *The Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, it shifts to the opposing party who, through affidavits or otherwise, must show that there is a material factual issue for trial. *See* Fed.R.Civ.P. 56(e); *see also, Smythe v. American Red Cross Blood Services Northeastern New York Region,* 797 F.Supp. 147, 151 (N.D.N.Y.1992). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *See Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

### B. *Case or Controversy*

■ Defendant seeks partial summary judgment claiming that its redesigned SHP3–50 filter does not literally infringe upon plaintiff's '494 patent or equivalently infringe under the Doctrine of Equivalents. Essentially, defendant asks the court to determine that its redesigned filter does not infringe upon plaintiff's patent. Plaintiff argues that this motion constitutes a request for an advisory opinion. Specifically, it claims that no case or controversy exists concerning whether the redesigned filter infringes upon the '494 patent, because there is not yet proof that defendant has committed acts of infringement under Section 271 of Title 35. *See* 35 U.S.C. § 271(a). Referencing Rule 56(f), plaintiff also contends that partial summary judgment is premature because discovery has not yet commenced.[4] *See* Fed.R.Civ.P. 56(f).

In response, defendant argues that plaintiff seeks to avoid summary judgment by simply claiming that there is no case or controversy regarding the redesigned filter's non-infringement. It suggests that plaintiff relies upon "inapposite authority" that concerns an action commenced by an alleged infringer seeking declaratory judgment under the Declaratory Judgment Act. 28 U.S.C. § 2201(a). Moreover, PPC rationalizes that the Declaratory Judgment Act's case or controversy requirement has been satisfied because Eagle has already commenced an infringement action.[5] For this reason, defendant argues that the question of the redesigned filter's infringement is ripe for adjudication. The court disagrees.

Article III, Section 2 of the United States Constitution permits federal courts to hear only those disputes that present a case or controversy. *See Carpenter Tech. Corp. v. City of Bridgeport,* 180 F.3d 93, 98 (2d Cir. 1999). In the instant case, defendant asks the court to determine if its redesigned SHP3–50 filter violates plaintiff's '494 patent.

---

**4.** For prudence sake, plaintiff also argues that defendant is not entitled to judgment of non-infringement claiming that: (1) because defendant has improperly construed its patent claims, PPC's redesigned filter literally infringes upon the '494 patent; (2) there are genuine questions of fact concerning the seal used in the redesigned filter; and, (3) the redesigned filter infringes under the Doctrine of Equivalents. Consideration of these arguments is unnecessary as the issue of the redesigned SHP3–50 filter's potential infringement upon the '494 patent is not currently before this court.

**5.** The court notes that defendant specifically seeks partial summary judgment; not a declaratory judgment under the Declaratory Judgment Act.

However, plaintiff has not yet made any claim concerning the redesigned filter. Specifically, in its amended complaint, plaintiff alleges that defendant "has been and still is infringing one or more of the claims of the '494 patent ... by making and supplying ... filter structures with self-sealing collet assemblies that are covered by at least one claim of the '494 patent." *See* Amended Compl. ¶ 8; Dkt. No. 2. Although the complaint does not indicate which of PPC's filters allegedly violate its patent, subsequent litigation focused upon defendant's original SHP3–50 filter. Because defendant redesigned its SHP3–50 filter after the institution of this action, the amended complaint does not, nor could it, challenge the design of the new SHP3–50 filter. For this reason, the question of whether the redesigned filter infringes upon the '494 patent has not been placed before this court, and so there is no actual case or controversy regarding this specific filter. Absent this essential requirement, defendant's motion for partial summary judgment is actually a request for an advisory opinion. Since the court is not permitted to render such opinions, defendant's motion for partial summary judgment is denied.

### C. *Preliminary Injunction*

 A preliminary injunction in a patent action constitutes "extraordinary relief." *See Helifix v. Blok–Lok, Ltd.,* 208 F.3d 1339, 1350 (Fed.Cir.2000). In order to obtain a preliminary injunction, a patentee has the burden of showing: (1) a reasonable likelihood of success on the merits; (2) irreparable harm; (3) a balance of hardships in its favor; and, (4) a public interest in favor of the injunction. *See Texas Instruments Inc. v. Tessera, Inc.,* 231 F.3d 1325 (Fed.Cir. 2000); *Jeneric/Pentron, Inc. v. Dillon Co., Inc.,* 205 F.3d 1377, 1380 (Fed.Cir.2000). Absent such proof, a court may decline to issue a preliminary injunction. *See Jeneric/Pentron, Inc.,* 205 F.3d at 1380. However, where a patentee "clearly shows" that its patent is valid and has been infringed, a court may, after balancing the competing equities, preliminarily enjoin a defendant from violating the rights secured by the pat-

ent. *See Nutrition 21 v. United States,* 930 F.2d 867, 870 (Fed.Cir.1991).

In this case, plaintiff seeks to prevent defendant from manufacturing products that infringe upon the '494 patent. With its original motion, Eagle specifically sought to enjoin production of PPC's original, redesigned and commercial SHP3–50 filter. *See* Dkt. No. 54. However, plaintiff now seeks to withdraw certain aspects of its motion based upon PPC's changes to its original filter design. *See* Feeney Aff. at ¶ 3; Dkt. No. 66. Specifically, it is now clear that defendant redesigned the original SHP3–50 filter after institution of this suit and no longer manufactures this product. Because defendant does not currently produce the original filter, plaintiff voluntarily discontinues its effort to enjoin manufacture of this filter.

Plaintiff also withdraws its motion to prevent the production of a commercially available version of the SHP3–50 filter. Apparently, this commercial filter was a "temporary redesign" manufactured in the time between production of the original filter and its current redesigned SHP3–50 filter. *See* Palinkas Decl. at ¶¶ 5–6; Dkt. No. 64. Because PPC no longer manufactures the commercial/temporary redesign SHP3–50 filter, *Id.* at ¶¶ 3–6, Eagle also withdraws this aspect of its motion.

 Nonetheless, plaintiff still seeks to enjoin production of PPC's redesigned SHP3–50 filter. The court denies this motion for the reasons stated previously. Whether or not the redesigned filter infringes upon the '494 patent is not a question currently before this court. Without a properly pleaded case or controversy concerning the redesigned filter, the court may not enjoin its production. Since plaintiff has not properly placed this issue before the court through a motion to amend the pleadings or a new filing, the instant motion for a preliminary injunction is denied.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED,** that defendant's Rule 56 motion for partial summary judgment is DENIED. It is further

**ORDERED,** that plaintiff's Rule 65 motion for a preliminary injunction is DENIED. It is further

**ORDERED,** that in the interest of judicial economy the Clerk of the Court shall direct any future motion to amend the pleadings to the undersigned rather than the assigned Magistrate Judge. It is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum—Decision and Order upon the parties by regular mail.

